Argued and submitted January 31, reversed and remanded October 24, 2012, petition for review allowed April 25, 2013 (353 Or 533)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEBORAH ANN MUSSER,
*Defendant-Appellant.*

Lane County Circuit Court
201001347; A145540

253 P3d 340

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew Morgan Lavin, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

This is a criminal case in which defendant appeals the trial court's judgment convicting her of possession of methamphetamine, ORS 475.894. On appeal, defendant assigns error to the trial court's denial of her motion to suppress evidence that a police officer obtained after he stopped her for criminal trespass in the second degree, ORS 164.245. Defendant asserts that (1) the stop was illegal because it was not supported by reasonable suspicion, and (2) the illegal stop tainted the subsequently discovered evidence. We agree and, therefore, reverse and remand.

Whether an officer has reasonable suspicion to stop a person is a question of law that we review for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). When doing so, we are bound by the trial court's factual findings, provided there is constitutionally sufficient evidence to support them. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). We state the relevant facts in accordance with that standard.

On January 2, 2010, at around 10:00 p.m., Springfield Police Officer Grice was patrolling the alley behind the Springfield Value Village shopping center. The shopping center consists of two large buildings, one to the west and one to the east. Each building is occupied by several businesses. The back doors of the businesses open to the alley. One of the businesses, Value Village, is a thrift store, and it maintains an area in the alley for the public to bring goods to donate for resale. The alley runs between two city streets. There are no gates or signs restricting access to the alley from the streets.

Grice was patrolling the alley because, in his experience, people often engage in theft, drug use, and other illegal activities there. As Grice drove through the alley, he saw defendant and another person standing on a walkway that runs between the shopping center's two buildings, connecting the front of the shopping center to the alley. The walkway runs along the side of, and around the back of, the western building. It is elevated a few feet above the surface of the alley, which is paved. It has railings to keep people from falling off the walkway onto the pavement, and it has a ramp down to the pavement.

As Grice approached in his patrol car, defendant began to walk away, toward the front of the shopping center. Grice accelerated, stopped, got out of his patrol car, approached defendant and her companion, and said, "I need to talk to you." Grice suspected they were trespassing. Defendant continued to walk away, and Grice called out, "Hey, come back here. I need to talk to you." Defendant turned around and walked to where Grice was standing.

Grice asked defendant for her identification, and defendant gave him a credit card with her name and picture on it. As defendant searched her purse for additional identification, Grice saw two pouches in defendant's purse and asked if he could search them. Defendant consented, and Grice searched the pouches. He then asked for consent to search defendant's entire purse. Defendant consented, and Grice searched the purse. He found a makeup bag, and, inside the makeup bag, he found a baggie containing a white crystalline substance that field-tested positive for methamphetamine. Grice arrested defendant, and the state subsequently charged her with possession of methamphetamine.

Defendant filed a motion to suppress the evidence Grice obtained after he stopped her for trespassing, asserting that (1) the stop was illegal because it was not based on reasonable suspicion, and (2) the illegal stop tainted the subsequently discovered evidence. The state conceded that Grice stopped defendant, but asserted that Grice had reasonable suspicion that defendant was trespassing.[1]

At the hearing on defendant's motion to suppress, the parties presented evidence regarding the location where Grice saw defendant. As mentioned, Grice had seen defendant on an elevated walkway that connects the front of the shopping center to the alley. The state introduced a photograph of the area around the walkway, as well as photographs of other areas in the alley. The photograph of the area around the walkway—which, as noted, runs

---

[1] Defendant also argued, in the alternative, that even if Grice had reasonable suspicion to stop her for trespassing, he unlawfully extended the stop by seeking her consent to the searches of the pouches and purse. Defendant renews that argument on appeal, but, because we conclude that Grice did not have reasonable suspicion to stop defendant for trespassing, we do not reach it.

along the side and around the back of the western building—shows a sign in the upper corner of the back wall of the western building. The sign states, "No trespassing or loitering 11 PM - 7 AM." Grice testified, "I don't remember ever seeing that sign before [January 2, 2010]."

A second photograph shows the area to the east of the elevated walkway—specifically, the back of a business in the eastern building. The business has a loading dock, with parking spaces for at least two semi-trucks. In the photograph, a semi-trailer is parked in one of the spaces and a dumpster is in another. To the east of the dumpster is a second dumpster. On the wall above the second dumpster is a sign that states, in both English and Spanish, "NO TRESPASSING NO LOITERING." Grice testified that the sign was posted on the night he stopped defendant and is approximately 50 feet east of the elevated walkway.

A third photograph shows two signs further to the east, posted near the Value Village's donation area. One states, "Donation hours Monday-Saturday 9-9 Sunday 10-7." The other states, "NO DUMPING. Donations Only Accepted During Business Hours. Violators will be prosecuted to the full extent of the law." Grice testified that the signs are about 100 feet east of the elevated walkway.

At the time Grice saw defendant, two restaurants in the shopping center were open. Both are near the elevated walkway.

The trial court denied defendant's motion to suppress, concluding that Grice had reasonable suspicion to stop defendant for criminal trespass because, the court explained, defendant and her companion were in an area where there was "frequent criminal activity, at an hour where there [was] no legitimate activity going on." Following a bench trial, the court convicted defendant. Defendant brought this appeal, challenging the court's denial of her motion to suppress.

On appeal, the parties renew the arguments they made before the trial court. Thus, the issue on appeal is whether Grice had reasonable suspicion to stop defendant for criminal trespass.

Under Article I, section 9, of the Oregon Constitution, which protects individuals from unreasonable searches and seizures, a stop is a seizure. *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010). To be reasonable, it must be supported by reasonable suspicion of criminal activity or an imminent threat of serious physical injury. *Id.* at 309. An officer has reasonable suspicion that a person has committed or is about to commit a crime if the officer "holds a belief that is reasonable under the totality of the circumstances existing at the time and place" the officer acts. ORS 131.605(6); *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997). To be objectively reasonable, an officer's suspicion must be based on specific and articulable facts. *Ehly*, 317 Or at 80.

ORS 164.245(1) defines the crime of criminal trespass in the second degree. It provides, "A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in a motor vehicle or in or upon premises." ORS 164.205 defines the operative phrases:

"(3) 'Enter or remain unlawfully' means:

"(a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so;

"* * * * *

"(4) 'Open to the public' means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required."

For premises to be considered "open to the public," they "must in some way—physically or as a matter of custom or through 'other circumstances'—objectively cause a reasonable person to believe that he or she is free to enter or remain on the property without permission, even if subjectively the owner intends the property to be private * * *." *State v. Hinton*, 209 Or App 210, 216, 147 P3d 345 (2006).

Based on the characteristics of the location where Grice saw defendant, we conclude that Grice did not have reasonable suspicion to stop defendant for trespassing

on the walkway. Nothing about the walkway's location or physical characteristics would cause a reasonable person to believe that it was closed to the public at the time defendant was on it.

As noted, the elevated walkway runs along the western building in the shopping center. The state introduced a photograph that shows a sign on the back wall of the western building that states, "No trespassing or loitering 11 PM - 7 AM." Grice did not recall seeing the sign before the night he stopped defendant. If the sign was posted that night, it would have indicated that the walkway was open to the public when Grice stopped defendant, which was around 10:00 p.m. If, on the other hand, the sign was not posted that night, then there were no signs adjacent to the walkway—which was physically distinct and separated from other areas in the alley—restricting access to it.

To support its argument that Grice had reasonable suspicion to stop defendant for trespassing, the state relies on the signs on the eastern building. But, for two reasons, those signs do not indicate that the elevated walkway was closed to the public. First, the walkway is separated from the eastern building and its signs. The walkway runs along the western building, sits above the alley, and is set off by railings, and the signs on the eastern building are 50 and 100 feet away. Thus, the walkway is separated from the eastern building by height, physical barriers, and distance. Second, the signs themselves indicate that the individual businesses in the shopping center control the access to areas around their back doors and do so differently. As mentioned, one business has a "NO TRESPASSING NO LOITERING" sign, indicating that the business prohibits all public access to the area around its back door. Further to the east, however, the Value Village store has signs that specify its donation hours, indicating that the store will receive donations from the public at its back door at certain times. Thus, signs posted by individual businesses do not appear to restrict access to other businesses or to the alley as whole.

In sum, Grice did not have reasonable suspicion to stop defendant for trespassing because there were no apparent restrictions on public access to the elevated

walkway at the time defendant was on it and the walkway was physically distinct from the areas where there were restrictions.[2]

In concluding that Grice had reasonable suspicion to stop defendant for trespassing, the trial court relied on the fact that defendant was in an area where there was frequent criminal activity and the fact that defendant walked away when Grice approached. But neither fact relates to the dispositive issue for criminal trespass, which is whether the walkway was open to the public. Certain parks, transit centers, and street corners may be sites of frequent criminal activity, but that does not mean that they are not open to the public. An officer could not stop a person for trespassing simply for being in such an area, even if the person walked away from the officer, unless the person had been previously excluded from the area. ORS 164.205(3) (providing that a person "enter[s] or remain[s] unlawfully" if the person enters premises open to the public after lawfully being directed not to enter or remains on premises open to the public after being lawfully directed to leave).

Because Grice stopped defendant without reasonable suspicion and there is no dispute that the evidence he subsequently obtained derived from that stop, the trial court erred by denying defendant's motion to suppress. *See State v. Rodgers / Kirkeby*, 347 Or 610, 629-30, 227 P3d 695 (2010) (where defendant's consent to a search was obtained during an illegal stop, evidence found during the search was inadmissible); *Hall*, 339 Or at 35-36 (where defendant's consent to a search was obtained during an illegal stop and there were no circumstances mitigating the effect of the illegal stop, evidence found during the search was inadmissible)).

Reversed and remanded.

---

[2] We note that, of the three signs on which the state relies, only one prohibits trespassing. The other two, which are posted near the Value Village donation center, simply specify the hours during which the public may make donations and prohibit dumping.