Submitted August 20, 2013, reversed and remanded July 2, 2014

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## BOBBY LYNN MOORE,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1100342; A150137

331 P3d 1027

Peter Gartlan, Chief Defender, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and De Muniz, Senior Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

In this criminal case, defendant was convicted of one count of unlawful possession of methamphetamine. ORS 475.894. He appeals, assigning error to the trial court's denial of his motion to suppress evidence obtained after he was stopped by a sheriff's deputy. He contends that, because the deputy lacked reasonable suspicion that he had committed a crime, the stop was illegal and the trial court should have suppressed all evidence obtained after the stop. On review for legal error, *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993), we reverse and remand.

We are bound by the trial court's findings of fact if there is constitutionally sufficient evidence in the record to support them. *Id.* at 75. If the trial court did not make express findings of fact on a pertinent issue and there is evidence from which those facts could be decided more than one way, we presume that the court found the facts in a manner consistent with its ultimate conclusion. *Id.* We state the facts in light of those standards.

On November 10, 2010, at about 1:00 p.m., Cook contacted police dispatch to report seeing two "suspicious males that had parked a vehicle on her property." Cook described the vehicle and relayed its license plate number to dispatch. Cook told dispatch that she had asked the men if they needed help; they declined and told her that they were working on a nearby Christmas tree farm. Cook did not report that she told the men that they were parked on her property or that she asked them to leave.[1] Cook lives in a "fairly remote," densely wooded part of rural Clackamas County.

Sheriff's Deputy Shelly responded to Cook's report. He did not talk to Cook about her report, but saw—just east of Cook's residence and parked on the shoulder "immediately adjacent to" the paved, public road—a vehicle matching Cook's description. The vehicle was "off the road, and it could have been on an easement, but it also could have very well just been right-of-way of the road." Shelly "didn't know

---

[1] Defendant acknowledged talking with Cook but testified that no one told him that he was trespassing or was in a place that he should not be.

if th[e] shoulder of the road was necessarily public or private property" or where Cook's property began and ended, and accordingly Shelly was unsure whether the vehicle was or was not trespassing on private property. There was no one in the vehicle or nearby. Shelly checked the vehicle's VIN number from the windshield and determined that the vehicle had not been reported stolen. Aside from the information he had initially received from dispatch, Shelly did not observe anything that caused him to conclude that a violation of the law was in progress.

Shortly after Shelly arrived, defendant walked out of nearby woods; Shelly did not know whether the area from which defendant emerged was Cook's or other private property. Defendant got into the parked vehicle. Intending, at least in part, to investigate whether a criminal trespass was occurring,[2] Shelly approached the vehicle and initiated the encounter with defendant by asking for his Oregon identification card. After Shelly used defendant's identification to check for warrants, he did not return it, but retained it while continuing to question defendant. Defendant's identification was not returned to him until he was released from jail later. In response to Shelly's question, defendant explained that he had been hunting mushrooms with a friend on property that was an overgrown Christmas tree farm belonging to someone other than Cook and that the owner of that property had given them permission to do so.

Ultimately, Shelly obtained defendant's consent to search him for weapons; during the course of the search, defendant told Shelly that he had drugs, and Shelly found methamphetamine in a container in defendant's pocket. Shelly arrested defendant, after which defendant made additional incriminating statements.

As noted, defendant moved to suppress all evidence obtained during and after his encounter with Shelly. Defendant contended that Shelly's stop of him, without reasonable suspicion that he was committing or had committed the crime of criminal trespass, violated the Fourth

---

[2] Shelly also had "some suspicions about the vehicle as being a non-reported stolen vehicle." No one contends that Shelly had reasonable suspicion to stop defendant for theft.

Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution. Defendant argued that Cook's report did not support reasonable suspicion because Shelly did not corroborate the report and because there was no evidence that the vehicle was in an area that was not open to the public. The state conceded that defendant had been stopped but argued that Shelly had reasonable suspicion to stop defendant based on Cook's report. The trial court denied the motion. The court reasoned that Shelly had sufficiently corroborated Cook's report and, thus, that he had reasonable suspicion to investigate criminal trespass and to stop defendant.

The parties reprise their arguments on appeal. The parties agree that Shelly's retention of defendant's identification in the circumstances of this case constituted a stop.[3] The only issue on appeal is whether Shelly had sufficient reasonable suspicion of criminal trespass to stop defendant under Article I, section 9.[4] For the reasons that follow, we conclude that the trial court erred in failing to suppress the evidence under Article I, section 9.

Article I, section 9, guarantees individuals the right to be "secure in their persons *** against unreasonable search, or seizure." Of the variety of possible police-citizen encounters, only some implicate Article I, section 9. *State v. Ashbaugh*, 349 Or 297, 308, 244 P3d 360 (2010). Among those encounters are "temporary detentions for investigatory purposes, often termed 'stops,' which generally require reasonable suspicion." *State v. Fair*, 353 Or 588, 593, 302 P3d 417 (2013). Reasonable suspicion has a subjective and an objective component: an officer has reasonable suspicion when the officer subjectively believes that the person has committed a crime and that belief is objectively reasonable in light of the totality of the circumstances. *Ehly*, 317 Or at 80; *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997). To be objectively reasonable, an officer's suspicion must be

---

[3] Because the parties did not dispute to the trial court and do not dispute now that defendant was stopped, we do not address that issue.

[4] On appeal, defendant again cites both Article I, section 9, and the Fourth Amendment. However, he does not develop an argument based on federal law distinct from his argument based on state law. Accordingly, we address only his state constitutional claim.

based on specific and articulable facts. *Ehly,* 317 Or at 80. "Reasonable suspicion does not require that the articulable facts as observed by the officer *conclusively* indicate illegal activity but, rather, only that those facts support the *reasonable inference* that a person has committed a crime." *State v. Hammonds/Deshler,* 155 Or App 622, 627, 964 P2d 1094 (1998) (emphases in original).

The parties do not dispute that Shelly subjectively believed that defendant was trespassing on Cook's property. The issue, therefore, is whether, on the basis of the specific, articulable facts known to Shelly at the time of the stop, it was objectively reasonable for him to believe that defendant was trespassing. Defendant offers three arguments why, in his view, Shelly's belief that he was trespassing was not objectively reasonable: (1) Cook's report was not sufficiently detailed to be reliable; (2) Shelly's observations did not sufficiently corroborate Cook's report; and (3) Cook's report and Shelly's observations did not establish the elements of the offense of trespassing. Because we agree with defendant's third argument, we do not address the other two.

ORS 164.245(1) defines second-degree criminal trespass. It provides, "A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in a motor vehicle or in or upon premises." ORS 164.205 defines the operative phrases:

"(3) 'Enter or remain unlawfully' means:

"(a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so[.]

"* * * * *

"(4) 'Open to the public' means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required.

"* * * * *

"(6) 'Premises' includes * * * any real property[.]"

Accordingly, if the physical nature, function, custom, or usage of property—or notice or lack of notice connected to the property—would cause a reasonable person to believe that no permission to enter or remain on the property is required, entering or remaining on the property is not criminal trespass. In other words, property is open to the public—and not subject to criminal trespass—when some characteristic of the property objectively would cause a reasonable person to believe that he or she is free to enter or remain on the property without permission, even if the owner intends the property to be private and requires permission to be there. *State v. Hinton*, 209 Or App 210, 216, 147 P3d 345 (2006) (cited with approval in *State v. Musser*, 253 Or App 178, 182, 289 P3d 340 (2012), *rev allowed*, 353 Or 533 (2013)).

Based on the facts known to Shelly at the time of the stop and the characteristics of the location where he saw the vehicle, we conclude that the vehicle was parked in an area that was open to the public and, accordingly, Shelly did not have reasonable suspicion to stop defendant for trespassing there. Shelly knew these facts: (1) Cook had reported that the vehicle was parked on her property. (2) Cook had reported that the men who parked the vehicle were "suspicious," had declined her offer of help, and had told her they were going to work on a nearby Christmas tree farm. (3) Cook's property is in a remote, heavily wooded, rural area. (4) The vehicle was parked on the shoulder of and "immediately adjacent" to a paved, public road. (5) Defendant walked out of a wooded area.

First, the location of the vehicle did not support a reasonable belief that defendant was trespassing. It is customary for vehicles to park on the shoulder of the road; in fact, the function of the shoulder of a road is to provide a safe place for vehicles to park without endangering their occupants or the occupants of other vehicles. *See also* ORS 801.480 (defining "shoulder" as "the portion of a highway, whether paved or unpaved, contiguous to the roadway that is primarily for use by pedestrians, *for the accommodation of stopped vehicles*, for emergency use and for lateral support of base and surface courses" (emphasis added)). Nothing in the record points to any characteristic of the shoulder that might have communicated to a reasonable person that it

was private property instead of part of the public road. But, even if that were so, nothing in this record created an inference that permission to enter or remain on the shoulder was required, *i.e.*, that it was different from other road shoulders that are open to the public. For example, there is no indication that there were signs designating the shoulder as privately owned and closed to others. *See* ORS 164.270 (for purposes of ORS 164.245, an owner may close the owner's property to motor-propelled vehicles by posting signs at or near the boundaries of the property at or near the boundaries of the land at the normal points of entry); *see also Musser*, 253 Or App at 183-84 (officer lacked objectively reasonable suspicion to stop the defendant for trespassing because there were no apparent restrictions on public access to the area in which the officer observed the defendant). Accordingly, a reasonable person would have believed, based on the nature of the area where the vehicle was parked, that it was open to the public, and no permission to enter or remain there was required.

The other facts known to Shelly at the time of the stop did not support a reasonable suspicion that defendant was trespassing. Cook reported that the men who parked the vehicle were "suspicious," had declined her offer of help, and had told her they were going to work on a nearby Christmas tree farm. As we have previously reasoned, an informant's report of "suspicious" people does not supply a factual basis for a stop; it merely alerts police to the situation. *State v. Greer*, 93 Or App 409, 412, 763 P2d 158 (1988). The state has not explained, and we do not understand, why declining Cook's offer of help or the remote, heavily wooded, rural location made it objectively more likely that defendant was trespassing.

Finally, there are no specific facts in this record from which a reasonable person would have concluded that the wooded area from which defendant emerged was Cook's property or other private property where defendant was not privileged to be. In fact, the only evidence in the record about the location from which defendant emerged is Shelly's testimony that he did not know if it was Cook's or other private property and defendant's testimony that it was on the other side of the street from Cook's property and that it

belonged to someone other than Cook. Where there are no objective indications that the woods are not open to the public or that a person is not privileged to be there, the fact that a person came out of the woods does not provide a sufficient basis from which to conclude that a person is trespassing. *See also State v. Paro*, 192 Vt 619, 623, 54 A3d 516 (2012) ("We recognize that police officers are trained to be suspicious and it is their job to investigate suspicious situations. But we must also be mindful of our right to wander where we please, when we please, without fear of a police seizure."), *quoted in State v. Martin* 260 Or App 461, 470, 317 P3d 408 (2014).

The state remonstrates that reasonable suspicion does not require that the facts observed by an officer conclusively indicate illegal activity but rather requires only that the officer can reasonably infer criminal activity. According to the state, one of the possible reasonable inferences available to Shelly based on the facts that he perceived was that defendant was trespassing on Cook's property. In particular, the state contends that Shelly could reasonably infer—based on Cook's report that the vehicle was parked on her property and from the fact that his own observations did not dispel the truth of that report—that defendant was trespassing. It is true that facts need not establish conclusively that a suspect has committed a crime before police may lawfully stop a suspect. However, an officer's suspicion must be objectively reasonable, which means that it must be based on facts and that any inference drawn from those facts must be reasonable. As we have explained, the facts known to Shelly at the time of the stop were not sufficient to support an objectively reasonable conclusion that defendant was trespassing. Specifically, as explained above, being parked on another's property in the circumstances presented here—without more—does not constitute trespass. Accordingly, Shelly would have had to observe more than the car being parked on Cook's property—not simply failed to see anything less— to reasonably infer that defendant was trespassing.

Because Shelly stopped defendant without reasonable suspicion that a crime had been or was being committed and there is no dispute that the evidence he subsequently obtained derived from that stop, the trial court

erred by denying defendant's motion to suppress. *See State v. Rodgers/Kirkeby*, 347 Or 610, 629-30, 227 P3d 695 (2010) (where the defendant's consent was obtained during an illegal stop, evidence found during the search was inadmissible); *State v. Hall*, 339 Or 7, 35-36, 115 P3d 908 (2005) (where the defendant's consent to a search was obtained during an illegal stop and there were no circumstances mitigating the effect of the illegal stop, evidence found during the search was inadmissible).

Reversed and remanded.