Submitted September 28, reversed and remanded October 28, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RALEIGH LEE SJOGREN,
*Defendant-Appellant.*

Coos County Circuit Court
13CR0679; A156411

361 P3d 633

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Nakamoto, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine in violation of ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence discovered after a law enforcement officer stopped him for trespassing. Specifically, defendant asserts that, before the evidence was discovered, the officer had unlawfully seized him without reasonable suspicion in violation of Article I, section 9, of the Oregon Constitution. Because we conclude that the officer's stop of defendant was not supported by reasonable suspicion, we reverse and remand.

We review the trial court's denial of a motion to suppress for legal error and "are bound by the trial court's findings of historical fact that are supported by evidence in the record." *State v. Holdorf,* 355 Or 812, 814, 333 P3d 982 (2014). "If the trial court did not make express findings of fact on a pertinent issue and there is evidence from which those facts could be decided more than one way, we presume that the court found the facts in a manner consistent with its ultimate conclusion." *State v. Moore,* 264 Or App 86, 87, 331 P3d 1027 (2014). We state the facts in light of those standards.

Libby Lane is a public road that runs through Coos County. A stretch of the road is bordered on one side by the Coquille Indian Reservation. Although the general public is invited to enter onto tribal lands on occasion, such as for certain celebrations throughout the year, generally tribal lands are not open to the public. Normally, only tribal employees and members have permission to enter onto tribal property. There are "No Trespassing" signs posted all along the land adjacent to Libby Lane.

Scoville is a patrol officer with the Coquille Tribal Police Department. While on patrol on Libby Lane early in the afternoon of December 17, 2012, Scoville saw a vehicle parked on tribal land. In particular, off the side of Libby Lane, there is a large, unpaved pull-out area that is tribal land. That pull-out area leads into a forest area; there is a "No Trespassing" sign posted high in a tree near the edge of the forest area beside the pull out. Scoville observed a

pickup truck with two occupants parked at the back edge of the pull-out area near the edge of the forested area. The tribe had been having trouble with people entering into that area to shoot guns and dump garbage, and Scoville suspected that the occupants of the vehicle might be in that location to dump garbage.

Scoville, who was driving a patrol vehicle, pulled off and parked in the pull-out area about 30 feet away from the truck. He did not activate his overhead lights or siren. After stopping, Scoville walked up to the truck to speak with the occupants, defendant and Smith, who was in the driver's seat. Scoville asked both men whether they were tribal members or employees and they responded that they were not. Scoville then informed defendant and Smith that they were trespassing on tribal land. He asked both men for identification and, upon receiving it, ran a "wants or warrants" check through Coos County dispatch. Defendant was "labeled 'officer safety' in [the] system."

Mitchell, an officer with the Coos County Sheriff's Office, later arrived to assist Scoville because of the perceived officer-safety issue. Scoville asked for and received consent from Smith to search the vehicle. Mitchell, who was interacting with defendant, asked defendant whether he had anything on his person that he should not and defendant stated that he did not. Mitchell, knowing that defendant had been labeled in the system as a possible threat to officer safety, then asked defendant for consent to conduct a patdown. Defendant consented and, during the patdown, Mitchell found the evidence at issue—a meth pipe—and arrested defendant.

Before trial, defendant filed a motion to suppress, asserting that the officer's contact with him "constituted a 'stop' unsupported by reasonable suspicion that Defendant had committed a crime." In particular, defendant contended that a stop occurred when Scoville asked defendant for his identification and ran it. In defendant's view, his presence in the pull-out area did not give rise to reasonable suspicion of trespass. Specifically, based on the look of the pull out and the placement of the "No Trespassing" sign, defendant claimed that it was "reasonable for a person such as

[defendant], or any other member of the public, to assume that the pull-out is * * * some place where a person could park." Accordingly, he asserted that the stop was unlawful and all evidence obtained as a result of the patdown should be suppressed. The state did not argue that defendant was not stopped.

The court agreed with defendant that he was stopped when Scoville asked him for identification. However, it concluded that the stop was supported by reasonable suspicion that defendant was trespassing. On appeal, defendant contends that he was stopped without reasonable suspicion and, therefore, the trial court erred in denying his motion to suppress.

Article I, section 9, protects "the right of the people to be secure in their persons * * * against unreasonable search, or seizure."

> "Analytically, police-citizen encounters typically fall into one of three categories that correlate the degree of intrusiveness on a citizen's liberty with the degree of justification required for the intrusion. At one end of the continuum are mere encounters for which no justification is required. At the other end are arrests, which involve protracted custodial restraint and require probable cause. In between are temporary detentions for investigatory purposes, often termed 'stops,' which generally require reasonable suspicion. Both stops and arrests are seizures for constitutional purposes, while less restrictive encounters are not."

*State v. Fair*, 353 Or 588, 593-94, 302 P3d 417 (2013) (citations and footnote omitted). A "temporary restraint on a person's liberty for the purpose of criminal investigation—*i.e.*, a 'stop'—qualifies as a seizure under Article I, section 9, and must be justified by a reasonable suspicion of criminal activity." *State v. Rodgers/Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010). According to defendant, the trial court correctly concluded that he was stopped when Scoville requested and retained his identification after informing him that he was trespassing. The state does not challenge that determination. Accordingly, we proceed with the understanding that defendant was stopped when Scoville asked for his identification. The issue, then, is whether, at that point, Scoville had reasonable suspicion that defendant was trespassing.

As noted, for a stop to be lawful, the police officer must have reasonable suspicion, that is, the officer "must have held a belief that was objectively reasonable under the totality of the circumstances existing at that time and place, that [the] defendant had committed a crime." *State v. Ehly*, 317 Or 66, 79, 854 P2d 421 (1993). "An officer must identify specific and articulable facts that produce a reasonable suspicion, based on the officer's experience, that criminal activity is afoot." *State v. Mitchele*, 240 Or App 86, 91, 251 P3d 760 (2010). "The standard of 'reasonable suspicion' justifying a police intrusion on [the liberty interest in freedom from unreasonable searches and seizures] when a person is stopped was intended to be less than the standard of probable cause to arrest." *Holdorf*, 355 Or at 823. "Reasonable suspicion does not require that the articulable facts as observed by the officer *conclusively* indicate illegal activity but, rather, only that those facts support the *reasonable inference* that a person has committed a crime." *State v. Hammonds/Deshler*, 155 Or App 622, 627, 964 P2d 1094 (1998) (emphases in original).

The parties do not dispute that Scoville subjectively believed that defendant was trespassing on tribal property. Accordingly, the issue is whether, based on the specific, articulable facts known to him at the time of the stop, it was objectively reasonable for Scoville to believe that defendant was trespassing. Defendant asserts that Scoville's suspicion that defendant was trespassing was objectively unreasonable because "nothing about the location of the pull-out, its physical characteristics, or custom or usage would cause a reasonable person to believe that permission was necessary to pull over onto the pull-out." We agree with defendant.

ORS 164.245(1) provides that a "person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully *** upon premises." Under ORS 164.205,

"(3) 'Enter or remain unlawfully' means:

"(a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so;

"* * * * *

"(4) 'Open to the public' means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required.

"* * * * *

"(6) 'Premises' includes * * * any real property[.]"

Thus, as we explained in *Moore*, 264 Or App at 91, "if the physical nature, function, custom, or usage of property—or notice or lack of notice connected to the property—would cause a reasonable person to believe that no permission to enter or remain on the property is required, entering or remaining on the property is not criminal trespass." When the characteristics of the property "would cause a reasonable person to believe that he or she is free to enter or remain on the property without permission," then the property is not "subject to criminal trespass," even "if the owner intends the property to be private and requires permission to be there." *Id.*

In *Moore*, we addressed the question whether an officer had reasonable suspicion of criminal trespass under circumstances similar to those at issue here. In that case, the officer knew the following facts:

"(1) [The property owner,] Cook had reported that [a] vehicle was parked on her property. (2) Cook had reported that the men who parked the vehicle were 'suspicious,' had declined her offer of help, and had told her they were going to work on a nearby Christmas tree farm. (3) Cook's property is in a remote, heavily wooded, rural area. (4) The vehicle was parked on the shoulder of and 'immediately adjacent' to a paved, public road. (5) Defendant walked out of a wooded area."

*Id.* We concluded that the officer did not have reasonable suspicion of criminal trespass. We explained that "being parked on another's property in the circumstances presented here—without more—does not constitute trespass." *Id.* at 93. Accordingly, the officer could not "reasonably infer that [the] defendant was trespassing." *Id.*

Here, before he asked for and received defendant's identification, the specific and articulable facts known to Scoville were as follows. (1) Defendant and Smith were in a parked vehicle on a large, tribally owned, pull-out area off Libby Lane, near the edge of the forest. (2) Only tribal members or employees had permission to be on tribal land, and neither defendant nor Smith was a tribal member or employee. (3) The pull-out area is edged by forest where people sometimes shoot guns and dump trash. (4) There is a "No Trespassing" sign high in a tree in the forest area that is visible from the pull out. Those facts do not support a reasonable suspicion that, by sitting in a parked vehicle in the pull-out area, defendant was trespassing.

As described above, the pull out is a large unpaved area between the pavement of Libby Lane and the forest. As we explained in *Moore*, "[i]t is customary for vehicles to park on the shoulder of the road; in fact, the function of the shoulder of a road is to provide a safe place for vehicles to park without endangering their occupants or the occupants of other vehicles." *Id.* at 91. Even though the gravel pull out is large, unless something else about the land signals to the contrary, members of the public would generally understand that such an area on the side of a road is intended for vehicles to stop and park.

Although the pull out is on tribal land and, according to Scoville, members of the public are not generally permitted on the land without permission, the record does not contain evidence of any characteristics of the pull out that "might have communicated to a reasonable person that it was private property" instead of a place where motorists could stop off the side of the public road. *Id.* at 91-92. As the state points out, there is a "No Trespassing" sign on a tree in the forested area. However, there is nothing about that sign or the characteristics of the land that would lead a reasonable person to understand that it pertained to the pull out, as opposed to or in addition to the forest area. To the contrary, given that the two areas are distinct and appear separate from one another—the pull out is a clear, unpaved, gravel area off the side of the road, while the forest area is covered with dense trees and other vegetation—the

presence of the sign in the forest and the absence of any sign in the pull-out area itself gives rise to an inference that the sign relates *only* to the forest area. As in *Moore*, "nothing in this record created an inference that permission to enter or remain [in the area] was required," *i.e.*, that it was different from other road shoulders or pull outs that are open to the public. *Id.* at 92; *see also id.* ("For example, there is no indication that there were signs designating the shoulder as privately owned and closed to others. *See* ORS 164.270 (for purposes of ORS 164.245, an owner may close the owner's property to motor-propelled vehicles by posting signs at or near the boundaries of the property * * * at the normal points of entry)[.]"). Thus, based on the characteristics of the pull out where the vehicle was parked, a reasonable person would have believed that the area was open to the public, and that no permission was required to enter or remain there. Accordingly, the facts known to Scoville at the time of the stop were not sufficient to support an objectively reasonable suspicion of criminal trespass.

Because Scoville stopped defendant without reasonable suspicion, and the state does not dispute that the evidence at issue derived from the stop, we conclude that the trial court erred in denying the motion to suppress.

Reversed and remanded.