Argued and submitted September 14, 2022; in Case No. 18CR60267, convictions on Counts 7, 15, and 24 reversed and remanded, remanded for resentencing, otherwise affirmed, in Case No. 19CR10804, remanded for resentencing, otherwise affirmed May 3, 2023

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# HOMER R. WAMPLER,
*Defendant-Appellant.*

Lincoln County Circuit Court
18CR60267, 19CR10804;
A172453 (Control), A172454

530 P3d 133

Defendant was convicted of a variety of offenses related to supplying methamphetamine to a 15-year-old girl in exchange for sexual acts. He appeals from two judgments of conviction and in his first three assignments of error challenges (1) the denial of his motion to suppress evidence after he was stopped in his car by an officer without reasonable suspicion, (2) the denial of his motion to suppress evidence obtained in violation of his *Miranda* rights, and (3) the acceptance of nonunanimous verdicts for one count each of luring a minor, ORS 167.057; rape in the third degree, ORS 163.355; and tampering with a witness, ORS 162.285. *Held*: The Court of Appeals concluded that, in light of the totality of the circumstances, it was objectively reasonable for the officer to suspect that defendant was trespassing. The court also determined that the stop was not unlawfully extended because the officer developed reasonable suspicion of unlawful sexual activity and unlawful drug activity. The court rejected defendant's second assignment of error because the record indicated that, assuming there was a *Miranda* violation, any error was harmless. Finally, the court accepted the state's concession that the acceptance of nonunanimous jury verdicts on three counts was error.

In Case No. 18CR60267, convictions on Counts 7, 15, and 24 reversed and remanded; remanded for resentencing; otherwise affirmed. In Case No. 19CR10804, remanded for resentencing; otherwise affirmed.

Sheryl Bachart, Judge.

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rolf Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

In Case No. 18CR60267, convictions on Counts 7, 15, and 24 reversed and remanded; remanded for resentencing; otherwise affirmed. In Case No. 19CR10804, remanded for resentencing; otherwise affirmed.

**KAMINS, J.**

Defendant was convicted of a variety of offenses related to supplying methamphetamine to his son's 15-year-old girlfriend in exchange for sexual acts. He was charged in two separate cases that were consolidated for a jury trial. He now appeals from the judgment in each of those cases, raising eight assignments of error as well as several *pro se* supplemental assignments of error. We write to address defendant's first, second, and third assignments of error. Those assignments challenge (1) the denial of defendant's motion to suppress evidence after he was stopped in his van by an officer, (2) the denial of his motion to suppress evidence that he asserts was obtained in violation of his *Miranda* rights, and (3) the court's acceptance of nonunanimous verdicts on Count 7, luring a minor, ORS 167.057; Count 15, rape in the third degree, ORS 163.355; and Count 24, tampering with a witness, ORS 162.285. We reverse and remand the convictions on Counts 7, 15, and 24 in Case No. 18CR60267, remand for resentencing, and otherwise affirm. In Case No. 19CR10804 we remand for resentencing, and otherwise affirm.[1]

---

[1] Defendant's fourth, fifth, and sixth assignments of error assert that the trial court erred when it denied his motions for judgment of acquittal on Counts 3 and 5, luring a minor, ORS 167.057, and Count 6, online sexual corruption of a child in the first degree, ORS 163.433, which we reject because we conclude that the evidence is sufficient

With regard to defendant's *pro se* assignments of error, his arguments concerning the constitutionality of the police encounter are addressed in this opinion; his argument challenging the effectiveness of counsel is not appropriate for direct appeal, *see, e.g.*, *State v. Rhodes*, 309 Or App 318, 319 n 1, 481 P3d 412, *rev den*, 368 Or 561 (2021) ("Ineffective assistance of counsel claims must be raised and resolved under the post-conviction relief procedure established by statute in Oregon and not on direct appeal."); we cannot assess his allegations that the district attorney made inappropriate comments during *voir dire* because he did not designate the record of that proceeding as part of the record on appeal, *Hersey v. Leon*, 314 Or App 227, 229, 497 P3d 763 (2021) (appellant's failure to designate the relevant portion of the record as part of the record on appeal renders that assignment of error unreviewable); with regard to his assertion that the trial court made inappropriate comments as to his guilt, after reviewing the record we do not find any of the statements to be improper; as to the trial court's denial of defendant's request for a new attorney, we conclude that the court did not abuse its discretion, *see State v. Daley*, 318 Or App 211, 212, 506 P3d 502, *rev den*, 370 Or 212 (2022) ("We review a request for substitute appointed counsel for abuse of discretion."); and finally, we reject defendant's contention that he was unlawfully placed in restraints in view of the jury because there is no evidence in the record demonstrating that the restraints were visible to the jury, and the

At approximately 8:55 p.m. while driving along Highway 101 as the sun was setting and it was getting dark, Deputy Parsons saw a minivan parked approximately 200 meters—*i.e.*, over 650 feet—away from the public highway on a narrow gravel road, beyond a large gravel pullout. The van was backed up to a logging gate with its engine and lights off. The van was parked in such a way that it blocked access to the gate. Parsons knew that the road was private timber property, although he could not recall if there were signs announcing that it was private property. Parsons also knew that logging roads—and particularly near gates on logging roads—are places where conduct such as trespassing, illegal camping, littering, and narcotics use, frequently occurs.

Parsons initially drove past the pull out, but he turned around, and about five minutes later, he approached the van. There were no other public roads or otherwise accessible areas that connected to the part of the logging road where the vehicle was parked. When Parsons approached the van he saw defendant, a middle-aged man, in the vehicle with a teenage girl, S. Parsons initiated that stop because he believed that defendant's presence on a privately owned logging road amounted to criminal trespass. ORS 164.245.

Upon approaching the van, Parsons attempted to speak with defendant, who was in the driver's seat of the van, through the closed driver side door. Because Parsons had difficulty understanding what defendant was saying through the closed door and window, Parsons asked if he could open the door to the van, and defendant agreed. After he opened the van's door, a "bubbler"—which Parsons described as looking "just like a makeshift drug smoking device"—became visible to Parsons, as it was hanging from the left side of defendant's steering wheel. Parsons proceeded to ask for defendant's and S's names and dates of birth, about the nature of their relationship, and the reason for their presence at that location. As a result of those

---

record supports the trial court's finding that defendant posed a risk of dangerous or disruptive behavior, *see State v. Wall*, 252 Or App 435, 439, 287 P3d 1250 (2012), *rev den*, 353 Or 280 (2013) ("A trial judge has the discretion to order the shackling of a defendant if there is evidence of an immediate and serious risk of dangerous or disruptive behavior." (Internal quotation marks omitted.)).

questions, Parsons discovered that S was 15, alone with the 38-year-old father of her boyfriend, and that their explanation for being parked on the logging road blocking access to the gate was that they were turning around. That explanation did not make sense to Parsons in light of the fact that there was a large gravel pullout immediately adjacent to Highway 101, and the car had its engine and lights off and had been there for several minutes.

Parsons continued investigating, asking questions related to his suspicion that their presence on the logging road was, in fact, for the purpose of unlawful drug use and unlawful sexual activity. Early on in that investigation, having observed the "makeshift drug smoking device," Parsons requested that an officer with a drug-detection dog come to the scene in order to do a "dog sniff around the vehicle."

Parsons ultimately asked for and received consent to search the vehicle before other officers arrived on the scene. When defendant exited the vehicle, Parsons conducted a patdown and found a vibrator and a "cut straw," which later tested positive for methamphetamine. Over the course of his search of the car, Parsons found defendant's phone and removed the makeshift drug smoking device. After that encounter and additional police investigation, the state alleged that defendant had engaged in an unlawful sexual relationship with S, which involved supplying S with methamphetamine in exchange for sex. Defendant was convicted of a variety of offenses stemming from that conduct.

In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress evidence obtained as a result of Parsons's encounter with defendant, because Parsons did not have reasonable suspicion to support the initial stop and, in the alternative, that Parsons unlawfully extended the stop. We review a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). If the trial court did not make express findings of fact on a pertinent issue and there is evidence from which those facts could be decided more than one way, we presume

that the court found the facts in a manner consistent with its ultimate conclusion. *State v. Sjogren*, 274 Or App 537, 538, 361 P3d 633 (2015).

Under Article I, section 9, of the Oregon Constitution, we must determine if the stop was justified by "reasonable suspicion of criminal activity." *State v. Rodgers/Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010). "Reasonable suspicion has a subjective and an objective component: an officer has reasonable suspicion when the officer subjectively believes that the person has committed a crime and that belief is objectively reasonable in light of the totality of the circumstances." *State v. Moore*, 264 Or App 86, 89, 331 P3d 1027 (2014). To be objectively reasonable, an officer's suspicion must be based on specific and articulable facts. *State v. Musser*, 253 Or App 178, 182, 289 P3d 340 (2012), *aff'd*, 356 Or 148, 335 P3d 814 (2014). Reasonable suspicion does not require that the articulable facts as observed by the officer conclusively indicate illegal activity but, rather, only that the facts support the reasonable inference that the person has committed a crime. *Sjogren*, 274 Or App at 541. We have explained that "[o]verall, reasonable suspicion is a relatively low barrier," and the reasonable suspicion standard includes "a proper regard for the experience that police officers bring with them when they encounter criminal suspects." *State v. Roberts*, 308 Or App 225, 230, 480 P3d 1016 (2020), *rev den*, 367 Or 827 (2021) (citations and internal quotation marks omitted).

The trial court concluded that defendant was stopped when Parsons parked and approached defendant's van, and that the stop was lawful, because Parsons had reasonable suspicion of criminal trespass.[2] "A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully *** in or upon premises." ORS 164.245(1). As relevant to this case, the phrase "[e]nter or remain unlawfully" is defined by ORS 164.205(3)(a) as "[t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to

---

[2] The parties do not take issue with the trial court's conclusion that defendant was stopped when Parsons approached the van, and so we assume without deciding that that conclusion was correct.

the public and when the entrant is not otherwise licensed or privileged to do so[.]" ORS 164.205(4) provides that "'[o]pen to the public' means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required." "[P]roperty is open to the public—and not subject to criminal trespass—when some characteristic of the property objectively would cause a reasonable person to believe that he or she is free to enter or remain on the property without permission, even if the owner intends the property to be private and requires permission to be there." *Moore*, 264 Or App at 91.

The question before us is whether it was objectively reasonable for Parsons to suspect that defendant was trespassing, given "the totality of the circumstances existing at the time and place." ORS 131.605(6). To answer that question, we must determine whether the circumstances were such that a reasonable person in defendant's position would have thought they needed permission to remain in that location. *See* ORS 164.205(4) ("[o]pen to the public" means that something about the premises "would cause a reasonable person to believe that no permission to enter or remain is required"); *see also Moore*, 264 Or App at 91 (criminal trespass requires that "the physical nature, function, custom, or usage of property—or notice or lack of notice connected to the property—would cause a reasonable person to believe that * * * permission to enter or remain on the property is required").

We conclude that, in light of the totality of the circumstances, it was objectively reasonable for Parsons to suspect that defendant was trespassing. It was nearly 9:00 p.m., the road was narrow and unpaved, and there was a closed gate to which defendant's van was blocking access. The gate and defendant's van were about 650 feet from the highway, and the part of the road where defendant's van was parked did not connect to any public areas or roads (other than the highway). *Cf. Moore*, 264 Or App at 91 (location of vehicle would not support reasonable belief that defendant was trespassing where vehicle was parked on the shoulder of and "immediately adjacent" to a paved, public road).

Our decision in *Sjogren* is instructive. In that case, the defendant, who was not a tribal member or employee, was in a parked vehicle on a large, tribally owned gravel pull-out area, edged by forest where people would sometimes shoot guns and dump trash, and there was a "No Trespassing" sign high in a tree in the forest area, visible from the pull out. *Sjogren*, 274 Or App at 543. We observed that nothing in the record indicated that the pull-out area "was different from other road shoulders or pull outs that are open to the public." *Id.* at 544. Accordingly, we concluded that, given the characteristics of the pull out where the vehicle was parked, "a reasonable person would have believed that the area was open to the public, and that no permission was required to enter or remain there." *Id.*

By contrast, the totality of the circumstances here conveyed that the narrow gravel road was not open to the public and required permission to remain. First, defendant's vehicle was well beyond the large gravel pull out immediately adjacent to Highway 101. *Cf. id*. at 543 (explaining that members of the public would generally understand that a pull-out area on the side of a road is intended for vehicles to stop and park). Additionally, that part of the road was unpaved, much narrower, ended at the gate, and did not connect to any public areas or roads apart from the highway. Finally, defendant was parked in front of the gate in a way that blocked access to it. All of those circumstances combined would have communicated to a reasonable person that the location was not open to the public and that permission was required to remain there.

Defendant contends that a person cannot commit criminal trespass unless signs announce that the land is private property. Defendant is correct that signs or fencing can signal that permission is required to enter or remain on premises. *See* ORS 164.270(1) (for criminal trespass in the second degree, a landowner "may close the privately owned premises *** to motor-propelled vehicles by posting signs on or near the boundaries of the closed premises at the normal points of entry"). Defendant goes one step further, however, to assert that the presence of signs is not merely part of the inquiry as to whether a property is open to the public, but rather a requirement. In support, defendant points to

case law outlining the rules surrounding government conduct and an individual's protected privacy interest under Article I, section 9. *See, e.g.*, *State v. Dixson/Digby*, 307 Or 195, 211-12, 766 P2d 1015 (1988) (holding that "[a] person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs").

We reject that assertion. Cases addressing *governmental* infringement on the constitutional right to privacy consider a specific question: "whether the government's conduct would significantly impair an individual's interest in freedom from scrutiny, *i.e.*, his privacy." *State v. Carle*, 266 Or App 102, 107, 337 P3d 904 (2014), *rev den*, 356 Or 767 (2015) (internal quotation marks omitted). That is a different legal question than the one before us now. Here, we must determine whether Parsons had reasonable suspicion that defendant committed criminal trespass, which, in turn, requires an examination of whether a reasonable person in defendant's position would have believed that they needed permission to enter or remain. Reasonable suspicion is determined based on a "totality of the circumstances." *Moore*, 264 Or App at 89. Those circumstances "need not conclusively indicate illegal activity, but, rather, need only support the reasonable inference" that defendant was trespassing. *State v. Schmitz*, 299 Or App 170, 176-77, 448 P3d 699 (2019) (internal quotation marks omitted).

Specific to criminal trespass, we must look to the "physical nature, function, custom, or usage of [the] property" in addition to "notice or lack of notice connected to the property." *Moore*, 264 Or App at 91. The presence of signs indicating that property is closed to the public is a factor to be considered in the analysis, but it is not alone determinative. To conclude otherwise would be contrary to ORS 164.205(4)'s requirement to consider a variety of factors in determining whether a reasonable person would feel free to enter or remain on a particular property without permission, as well as the rule that reasonable suspicion itself is assessed based on the totality of the circumstances. *See, e.g.*, *Moore*, 264 Or App at 89 (an officer has reasonable suspicion if the subjective belief that the person has committed a

crime is "objectively reasonable in light of the totality of the circumstances").

In the alternative, defendant contends that, even if reasonable suspicion supported the stop, Parsons unlawfully extended the stop with his questioning. "[A]n officer is limited to investigatory inquiries that are reasonably related to the purpose of the traffic stop or that have an independent constitutional justification." *State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019).

The trial court determined that Parsons had reasonable suspicion of unlawful drug activity and unlawful sexual activity, justifying further investigation. Defendant, on the other hand, maintains that Parsons's questions about S's name, age, and the nature of her relationship with defendant, as well as questions about drugs, were not justified by the criminal trespass investigation or reasonable suspicion of any other illegal activity.

The trial court did not err because Parsons's questions were justified initially by the criminal trespass investigation and then subsequently by reasonable suspicion of unlawful sexual activity and unlawful drug activity. Although defendant disputes that the initial questions related to defendant's and S's names and dates of birth could be related to the criminal trespass, those questions were pertinent to that investigation because their identities would be relevant as to whether they had permission to be at that location.[3] *See State v. Watson*, 353 Or 768, 782, 305 P3d 94 (2013) (concluding that "an officer's determination of a person's identity generally is reasonably related to the officer's investigation of a traffic infraction"); *cf. State v. Fair*, 353 Or 588, 614-15, 302 P3d 417 (2013) (officer inquiries in context were reasonably necessary to determine defendant's identity in investigation of domestic assault).

_____

[3] Defendant contends that those questions could not be related to the criminal trespass investigation because Parsons testified that he never explicitly asked defendant about the criminal trespass. However, the fact that Parsons never specifically asked defendant about the trespass does not mean that his initial questions were not reasonably related to the criminal trespass investigation. Additionally, Parsons testified that he asked them what they were doing at that location because they were on private timber property, which supports the trial court's finding that Parsons was investigating the criminal trespass.

The circumstances Parsons discovered based on those initial questions—that S was 15, alone in a van with a 38-year-old man who did not share a last name with her, parked with the engine and lights off for around five minutes on a private logging road which did not connect to any public areas or roads aside from the highway, approximately 200 meters—*i.e.*, over 650 feet—away from the highway, at nearly 9:00 p.m., as it was getting dark—gave rise to reasonable suspicion of unlawful sexual activity. In reaching that conclusion, we note the secluded nature of the location defendant had parked, and that defendant had parked the furthest distance possible one could travel from the highway on the private road, suggesting that such seclusion was desired by defendant.

Defendant contends that, because his and S's clothes were not in disarray, and they were seated in the front of the vehicle as opposed to the back, those other facts would not give rise to reasonable suspicion of unlawful sexual activity. However, reasonable suspicion does not require that the officer suspect that defendant has *already* committed a crime. It is enough if the articulated facts give rise to a reasonable inference that defendant was *about to* commit the crime. *See Maciel-Figueroa*, 361 Or at 184 (the standard for reasonable suspicion "requires that the articulated facts that formed the basis for the officer's suspicion give rise to a reasonable inference that the defendant has committed or is about to commit the crime that the officer suspects" (emphasis omitted)). The articulated facts met that standard.

Parsons also developed reasonable suspicion of drug activity. As noted, Parsons testified that individuals frequently use drugs by the gates at the end of logging roads. Although "presence in a high drug-activity area in itself is not adequate to give rise to reasonable suspicion," it nevertheless is "relevant to a determination of reasonable suspicion of a drug-related crime." *State v. Huffman*, 274 Or App 308, 313, 360 P3d 707 (2015), *rev den*, 358 Or 550 (2016) (citations omitted). The van's location next to a gate at the end of a private logging road is particularly relevant because it is a remote location where people would otherwise not be expected. *Cf. State v. Bertsch*, 251 Or App 128, 133-34, 284 P3d 502 (2012) (defendant visiting an apartment

associated with drug activity did not give rise to reasonable suspicion that defendant herself was involved in criminal activity). Further, the presence of something that looked to Parsons like a "makeshift drug smoking device" hanging from the left side of defendant's steering wheel would have added to Parsons's suspicion of unlawful drug activity. *See State v. Miller*, 319 Or App 32, 37-39, 508 P3d 542, *rev den*, 370 Or 197 (2022) (presence of an uncapped syringe and lighter, combined with the facts that defendant was parked crookedly in a grocery store parking lot late at night, that he denied the syringe was for treating diabetes, his sleeve was rolled up, and that defendant was nervous and gave shifting and contradictory statements about the syringe amounted to reasonable suspicion of drug possession). Those circumstances, together with the vehicle's location over 650 feet from the public road, parked with the engine and lights off close to 9:00 p.m., defendant's unconvincing explanation for their presence on the logging road, and the fact that no other roads or public areas were visible near the vehicle, gave rise to reasonable suspicion of unlawful drug activity. *Cf. State v. Taylor*, 308 Or App 61, 72, 479 P3d 620 (2020) (articulated facts in that case did not "inherently raise suspicion of criminal activity whether viewed individually or collectively").

Parsons's reasonable suspicion of defendant's unlawful sexual relationship with S and unlawful drug activity supported further inquiries about and request for consent to search defendant's vehicle for evidence of those crimes. Therefore, the trial court did not err in concluding that Parsons lawfully extended the stop based on reasonable suspicion of unlawful sexual activity and unlawful drug activity.

Defendant's second assignment of error pertains to the trial court's denial of his motion to suppress statements in violation of his constitutional right against self-incrimination. We reject that assignment of error, because the record indicates that, assuming there was a *Miranda* violation, any error was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the

verdict?").[4] The portion of Parsons's body camera recording containing defendant's statements that would be implicated by a *Miranda* violation was played once at the beginning of defendant's jury trial and was not the focal point of the state's case. *See State v. Carrillo*, 304 Or App 192, 204, 466 P3d 1023, *rev den*, 367 Or 220 (2020) (how the parties used the challenged evidence at trial is a consideration in determining whether any error in admitting that evidence was harmless); *State v. Stewart*, 270 Or App 333, 341, 347 P3d 1060, *rev den*, 357 Or 743 (2015) (explaining that for harmless error analysis "we consider the importance of the erroneously admitted evidence to a party's theory of the case"). Moreover, most of defendant's statements were cumulative of other testimony in the record. *See State v. Thompson*, 370 Or 273, 298, 518 P3d 923 (2022) (where unchallenged testimony already made clear that defendant was not being entirely truthful or forthright, statement implicated by the trial court's error that could support the same inference was cumulative); *State v. Bradley*, 253 Or App 277, 285, 290 P3d 827 (2012) ("Evidence is cumulative when it demonstrates the same thing as other admitted evidence."). Finally, the statements that were not cumulative of other evidence did not relate to any material fact or element in the case and, thus, were harmless. *See State v. Black*, 364 Or 579, 596, 437 P3d 1121 (2019) (explaining that an error "is less likely to be harmless where it relates to a central factual issue in the case"). In light of this record, we conclude that any erroneous admission of defendant's statements would have had little likelihood of affecting the verdict.

Defendant's third assignment of error challenges the trial court's acceptance of nonunanimous verdicts, and the state concedes the error. We agree and accept that concession. *State v. Flores Ramos*, 367 Or 292, 333-34, 478 P3d 515 (2020). Accordingly, we reverse and remand defendant's convictions on Counts 7, 15, and 24 in Case No. 18CR60267.

Because we must remand for resentencing, we do not address defendant's seventh and eighth assignments

---

[4] Defendant also argues that any *Miranda* violation would implicate the searches of his phone conducted by the police and defendant's later interview with a detective. After reviewing the record, we conclude that those arguments are unpreserved, and we do not consider them.

of error challenging the proportionality of his sentences on Counts 19 and 20. *See State v. Zolotoff*, 275 Or App 384, 399, 365 P3d 131 (2015) (remand for resentencing obviated the need to address defendant's remaining challenges to aspects of his sentences). We also remand Case No. 19CR10804 for resentencing, because the cases were tried and sentenced together. *See State v. Sheikh-Nur*, 285 Or App 529, 540, 398 P3d 472, *rev den*, 361 Or 886 (2017) (where multiple cases were tried together, error required resentencing on all cases).

        In Case No. 18CR60267, convictions on Counts 7, 15, and 24 reversed and remanded; remanded for resentencing; otherwise affirmed. In Case No. 19CR10804, remanded for resentencing; otherwise affirmed.