No. 407 June 12, 2024 271

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRANDYN JAMES CHARLES OLINGER,
*Defendant-Appellant.*

Douglas County Circuit Court
20CR15892; A177564

Frances Elaine Burge, Judge.

Argued and submitted on June 20, 2023.

Emily P. Seltzer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Brandyn James Charles Olinger filed supplemental and reply briefs *pro se*.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction entered following a conditional guilty plea.[1] In two assignments of error, he challenges the trial court's denial of his motion to suppress evidence that a trooper obtained after he stopped defendant for speeding. For the following reasons, we affirm.

"We review a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them." *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). If the trial court "did not make express findings and there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently with the trial court's ultimate conclusion." *Id.* at 166.

At the suppression hearing, the trooper testified that he had observed defendant driving at a high rate of speed and initiated a traffic stop at about midnight. When defendant pulled over, the trooper "immediately noticed that all of the windows, rear inside windows, were fogged up with heavy condensation." The trooper approached the passenger side of the car and saw a female, X, in the front passenger seat.[2] Because he has three daughters—one of whom was an adult—the trooper believed that X was 14 or 15 years old. He also noticed that X "tr[ied] to hide her face," that she "seemed very nervous," and that "her hair was kind of disheveled in appearance." Defendant provided his name and his date of birth, which indicated that he was 21 years old. The trooper testified that, at that point, he had "reasonable suspicion * * * that something has been going on. Most likely sexual activity somewhere close for the windows still to be fogged up." The trooper then asked X for her name, if she was "okay," and her age. X stated her name, that she was "fine," and that she was 15 years old.

---

[1] Defendant pleaded guilty to using a child in a display of sexually explicit conduct, ORS 163.760, third-degree sodomy, ORS 163.385, and luring a minor, ORS 167.057.

[2] The trooper testified that he approached the passenger side of car because it was "furthest away from motoring traffic."

After providing defendant and X's names to a dispatcher, the trooper asked X to exit the car and asked her several questions, including where she and defendant had been that night. X stated that she had snuck out of the house and that she and defendant had driven around "just talking." The trooper then asked defendant where he and X had been and about their relationship. After X's mother arrived, the trooper told defendant that he was "free to go."

After concluding that the trooper had probable cause to stop defendant, the court found that,

"[the trooper] explained it in detail and I think the evidence is pretty clear that he *** had concerns that there was sexual activity occurring which would be a crime because of [defendant's] age and [X's] age. And so he inquired. He, he also inquired because he was trying to determine if the passenger was committing a curfew violation pursuant to [ORS 419C.680]. And she was. *** And I find that [the trooper's] suspicions were reasonable based on all of those things. Not just one thing but all of those things as described."

On appeal, defendant argues that the trooper violated Article I, section 9, of the Oregon Constitution by asking questions that "unlawfully expanded the scope and duration of the traffic stop."[3] Specifically, he contends that the trooper lacked reasonable suspicion of a crime when he asked X if she was "okay," her name and age, and then separately asked X and defendant about their relationship and activities. In response, the state argues that this case is similar to *State v. Wampler*, 325 Or App 722, 530 P3d 133, *rev den*, 371 Or 477 (2023), because the facts "gave rise to a reasonable suspicion that defendant may have engaged in unlawful sexual activity with a minor, justifying further investigation." We agree with the state's argument.

We have explained that "[o]fficers investigating a traffic infraction cannot engage in 'investigative activities, including investigative inquiries' that are unrelated to that infraction, unless those activities have an 'independent constitutional justification,' *such as reasonable suspicion of*

---

[3] Defendant does not challenge the trial court's conclusion that the trooper had probable cause to stop him.

*another crime." State v. Wicks*, 332 Or App 67, 69, ___ P3d ___ (2024) (quoting *State v. Arreola-Bottello*, 365 Or 695, 712, 451 P3d 939 (2019) (emphasis added)). "Reasonable suspicion has a subjective and an objective component[.]" *State v. Moore*, 264 Or App 86, 89, 331 P3d 1027 (2014). Because we do not understand defendant to challenge the trooper's subjective belief that criminal activity had occurred, we consider the objective component.

> "Reasonable suspicion exists when an officer can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime. That inference must be objectively reasonable in light of the totality of circumstances known to the officer."

*Wicks*, 332 Or App at 69-70 (internal quotation marks and citation omitted); *see also Wampler*, 325 Or App at 727 ("[R]easonable suspicion is a relatively low barrier, and the reasonable suspicion standard includes a proper regard for the experience that police officers bring with them when they encounter criminal suspects." (Internal quotation marks omitted.)).

We conclude that the trial court did not err in denying defendant's motion because reasonable suspicion of unlawful sexual activity justified the trooper's questions. Here, the trial court relied on several specific and articulable facts: the stop occurred at about midnight; the car windows were "totally fogged" and remained fogged throughout the stop; the trooper recognized that defendant was an adult and that X was about 15 years old; and X was shaking and hid her face. Those facts—when considered in light of the totality of the circumstances known to the trooper—create an objectively reasonable inference of unlawful sexual activity. *See Wampler*, 325 Or App at 732 (concluding that the circumstances—including the time of day, location, and the defendant and the passenger's ages—supported reasonable suspicion of unlawful sexual activity); *see also Wicks*, 332 Or App at 71 (concluding that "two 'specific and articulable facts'" supported an objectively reasonable inference that the defendant was impaired, even though "those facts could have multiple explanations").

Although defendant insists that this case is distinguishable from *Wampler* because the defendant there was parked in a "secluded location" while, here, defendant was driving on a "highway with a speed limit of 55 miles per hour," we are not persuaded. "[F]acts do not exist in a vacuum," *State v. Miller*, 319 Or App 32, 39, 508 P3d 542, *rev den*, 370 Or 197 (2022), and the "specific and articulable facts" here gave rise to reasonable suspicion of unlawful sexual activity.[4]

Finally, we decline to consider defendant's arguments under the Fourth Amendment to the United States Constitution because he did not preserve them. ORAP 5.45(1); *State v. Neill*, 216 Or App 499, 504 n 3, 173 P3d 1262 (2007), *rev den*, 344 Or 671 (2008) ("Although defendant cited the Fourth and Fourteenth Amendments to the United States Constitution as relevant 'Points and Authorities' in her motion to suppress the evidence, her accompanying memorandum was grounded exclusively in Oregon law, and she did not raise a federal constitutional argument during the hearing below."). The trial court did not err.

Affirmed.

---

[4] We do not reach the arguments that defendant advanced in his opening brief and *pro se* supplemental brief challenging the court's determination that the trooper had reasonable suspicion of a curfew violation.